IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOHN M. HERRMANN AND<br>CONCHITA HERRMANN,<br>　　　　　*Plaintiffs*<br><br>-vs-<br><br>CREDIT UNION OF TEXAS, *et al.*,<br>　　　　　*Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | SA-25-CV-642-XR |

## ORDER

On this date, the Court considered (1) Defendants' motions to dismiss (ECF Nos. 14, 26) and motions to declare Plaintiffs vexatious litigants (ECF Nos. 15, 27) and the parties' briefing thereon (ECF Nos. 16, 19–23, 29–30); and (2) Plaintiffs' various motions (ECF Nos. 36, 40, 44–48, 51), and the parties' briefing thereon (ECF Nos. 41, 42, 49–53); and (3) Defendants' Motion to Require Plaintiffs to Obtain Leave of Court Before Filing Additional Pleadings and Order Relieving Defendants of Any Obligation to Respond Absent Court Direction (ECF No. 54). After careful consideration, the Court issues the following order.

## BACKGROUND

This is one of eight lawsuits that Plaintiffs have filed in the San Antonio division of the Western District of Texas since May 2024.[1] In addition, Mr. Herrmann has filed at least ten lawsuits in Justice Court, Precinct 3 of Guadalupe County.[2]

---

[1] *See Herrmann v. Bridger*, No. 5:24-CV-545-JKP-RBF (dismissed under Rules 12(b)(5) and 12(b)(6); *Herrmann v. Pointer*, No. 5:24-CV-764-XR (dismissed under Rules 12(b)(1) and 12(b)(6)); *Herrmann v. Jon*, No. 5:24-CV-1025-XR (dismissed under Rules 12(b)(1) and 12(b)(6)); *Herrmann v. Biery*, No. 5:24-CV-1195-XR (dismissed *sua sponte* on the basis of judicial immunity); *Herrman v. Pulliam*, No. 5:24-CV-1387-FB (pending); *Herrmann v. Ray*, No. 5:25-CV-120 (dismissed for failure to prosecute); *Herrmann v. Squires, III*, No. 5:25-CV-561-OLG (dismissed under § 1915(e)); *Herrmann v. Credit Union of Tex.*, No. 5:25-CV-642-XR (pending).

[2] *See Herrmann v. Leonie*, No. S323107 (dismissed via plea to the jurisdiction); *Herrmann v. Bridger*, No. S323108 (dismissed via plea to the jurisdiction); *Herrmann v. Cecil*, No. S323109 (dismissed via plea to the jurisdiction); *Herrmann v. Lane*, No. S323110 (dismissed via plea to the jurisdiction); *Herrmann v. Delgado*, No. C323111 (dismissed via plea to the jurisdiction); *Herrmann v. England*, No. C323112 (dismissed via plea to the jurisdiction); *Herrmann v. Mallett*, No. C323113 (dismissed via plea to the jurisdiction); *Herrmann v. Mora*, No. C323114

Nearly all the Herrmanns' lawsuits—including this one—arise out of their default on a home equity line of credit ("HELOC"), the subsequent foreclosure of the lien securing the HELOC by Defendant Credit Union of Texas ("CUTX"), the resulting forcible detainer suit filed against the Herrmanns, and local officials' efforts to evict them.[3] The targets of the Herrmanns' numerous lawsuits are often, among others, County officials, County employees, City officials, City employees, state judges, and federal judges.

## I.    The HELOC

In December 2021, the Herrmanns obtained a HELOC, secured by their property located at 2042 Carter Lane in New Braunfels, Texas (the "Property"). ECF No. 8 ¶ 2; *see* ECF No. 12-3 (Deed of Trust).[4] They immediately drew down about $310,000. Between February 2022 and November 2023, the Herrmanns made some payments of principal and interest and occasionally drew down additional funds from the HELOC, but around December 2023 they ceased making payments.

---

(dismissed via plea to the jurisdiction); *Herrmann v. Reynolds*, No. C323115 (dismissed via plea to the jurisdiction); *Herrmann v. Garner*, No. C323116 (dismissed via plea to the jurisdiction).

[3] *Credit Union of Tex. v. Herrmann*, No. 24-2744-CVC (25th Judicial District Court of Guadalupe County, Texas); *Credit Union of Tex. v. Herrmann*, No. JEV4-3951 (Justice Court, Precinct 4 of Guadalupe County, Texas).

[4] The operative pleading, filed on June 30, 2025, appears to be docketed at ECF No. 8. A week later Plaintiffs filed an "amendment" to their original complaint adding over 95 pages of exhibits, which the Court construes as a supplemental (rather than amended) pleading. *See* ECF No. 12. These exhibits include several articles about mortgage securitization, documents submitted by a private investigator purporting to locate the HELOC in a securitization trust (CUTX Debt Securities 1-2022), the Deed of Trust, and Guadalupe County court orders and transcripts. *See* ECF Nos. 12-1–7.

In deciding a motion to dismiss, a court may consider documents incorporated into the complaint by reference. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The Court may also consider any documents attached to the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). Because these documents are central to the claims in the complaint and referenced therein, the Court may consider them in evaluating Defendants' motions to dismiss.

## II.    Foreclosure Litigation and Foreclosure Sale[5]

In July 2024, the Herrmanns sued in federal court, seeking to prevent foreclosure of the Property and alleging claims sounding in fraud against seven CUTX employees (but not CUTX itself) based on a purportedly improper securitization of the HELOC and defective UCC filings. *See Herrmann v. Pointer et al.*, No. 5:24-cv-764-XR, ECF No. 1 (W.D. Tex. July 11, 2024).[6] Those claims were dismissed in July 2025 for lack of subject matter jurisdiction. *See id.*, ECF No. 71.

In October 2024, CUTX filed suit in Texas state court seeking to foreclose on the lien securing the HELOC. The 25th Judicial District Court of Guadalupe County entered an expedited order allowing foreclosure of the lien securing the HELOC under Tex. R. Civ. P. 736 in December 2024. *See* ECF No. 8 ¶ 3; ECF No. 12-5 (Order Allowing Foreclosure). The Herrmanns' appeal of the foreclosure judgment was dismissed because Tex. R. Civ. P. 736 expressly disallows such appeals. *See Herrmann v. Credit Union of Tex.*, No. 04-24-848-CV, 2025 WL 615397, at *1 (Tex. App.—San Antonio, Feb. 26, 2025, pet. denied).

On January 7, 2025, the Property was sold at a non-judicial foreclosure sale, and, "pursuant to section 21 of the deed of trust, the Herrmanns became tenants at sufferance." *Herrmann v. Credit Union of Texas*, No. 04-25-209-CV, 2025 WL 2235001, at *2 (Tex. App.—San Antonio, Aug. 6, 2025, pet. denied).[7]

---

[5] The Court takes judicial notice of orders filed in the Herrmanns' previous lawsuits. *See Krystal One Acquisitions, LLC v. Bank of Am., N.A.*, 805 F. App'x 283, 287 (5th Cir. 2020) (permitting district court to take judicial notice of filings from prior lawsuits because such documents were public records).

[6] This suit was later consolidated with a case filed by the Herrmanns in September 2024, apparently in anticipation of tax collection proceedings against them by Comal County and Guadalupe County. *See Herrmann v. Hoyt et al*, No. 5:24-cv-1025-XR, ECF No. 1 (W.D. Tex. Sept. 10, 2024). Those cases were transferred to Judge Pulliam (after the Herrmanns sued Judge Biery, who was assigned to the lead action, in another case) and then to the undersigned (after the Herrmanns sued Judge Pulliam).

[7] *See also* ECF No. 12-3 at 29 ("If the Property is sold pursuant to this Section 21, Borrower . . . shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered Borrower . . . shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.").

### III.    Forcible Detainer and Eviction

On March 31, 2025, the Guadalupe County Court granted CUTX's motion for summary judgment, entered a forcible detainer eviction judgment against the Herrmanns, and issued a writ of possession. *See* ECF No. 12-6.[8] Their appeal was later dismissed as moot because, "[as] tenants at sufferance under the deed of trust, they [were] unable to assert a potentially meritorious claim of right to current, actual possession of the property." *Herrmann v. Credit Union of Texas*, No. 04-25-00209-CV, 2025 WL 2235001, at *2 (Tex. App.—San Antonio Aug. 6, 2025, pet. denied); *see also id.* (vacating trial court's judgments of possession based on mootness) (citing *Marshall v. Hous. Auth. of the City of San Antonio*, 198 S.W.3d 782, 785 (Tex. 2006)).

In April 2025, the County Defendants—Constable Harvey Faulkner ("Constable Faulkner"), Chief Deputy Constable Jim Wolverton ("Chief Wolverton"), both from the Guadalupe County Precinct 4, and John Doe 3—along with other unidentified law enforcement officers, executed the writ of possession and forcibly evicted Mr. Herrmann from the Property. The Herrmanns allege that the County Defendants "forcibly executed a writ of possession by smashing Plaintiffs' front door with a battering ram and detaining John M. Herrmann." ECF No. 8 ¶ 7. Mr. Herrmann asserts that "as a result of illegal execution of a void writ of possession," he "now faces a potential felony charge." *Id.* The complaint does not go into any detail about either of the County Defendants' conduct in allegedly "detaining" Mr. Herrmann or explain how the execution of the writ of possession has resulted in a "potential felony charge." *See generally* ECF No. 8.

---

[8] The court also set a supersedeas bond of $4,000 to stay execution of the judgment, which the Herrmanns evidently failed to pay. *Herrmann v. Credit Union of Texas*, No. 04-25-00209-CV, 2025 WL 2235001, at *1 (Tex. App.—San Antonio Aug. 6, 2025, pet. denied).

**IV.    Eviction Litigation**

The Herrmanns filed several other lawsuits in 2025 challenging the foreclosure of the Property, the validity of the County Court's orders, and Guadalupe County officials' efforts to execute the writ of possession.

The first, filed in federal court in February 2025 against various Guadlupe County officials (including Constable Faulkner), was dismissed for failure to prosecute. *See Herrmann v. Ray*, No. SA-25-CV-120-JKP (W.D. Tex. Mar. 3, 2025).

The second, filed in federal court in May 2025, was dismissed based on the absolute immunity of several Guadalupe County defendants, including Constable Faulkner and "unidentified men." *See Herrmann v. Squires*, No. SA-25-CV-561-OLG, 2025 WL 2327946, at \*1 (W.D. Tex. July 21, 2025), *report and recommendation adopted*, 2025 WL 2326066 (W.D. Tex. Aug. 12, 2025). After reviewing the Herrmanns' more definite statement, the Magistrate Judge recommended dismissal under 28 U.S.C. § 1915(e):

> "[G]overnment officials in their execution of facially valid judicial orders entered by a court of competent jurisdiction" . . . have absolute immunity. *Mays v. Sudderth*, 97 F.3d 107, 112 (5th Cir. 1996) (citing *Erskine v. Hohnbach*, 81 U.S. 613, 613 (1871)). More specifically, law enforcement officers "have absolute immunity for enforcing the terms of a court order but only qualified immunity for the manner in which they choose to enforce it." *In re Foust*, 310 F.3d 849, 855 (5th Cir. 2002). Thus, any claims arising out Defendants Ray, Faulkner, and "unidentified men" simply carrying out an eviction order are barred by absolute immunity[.]

*Id.* at \*2.[9] Moreover, because the Herrmanns no longer owned the Property at the time of the writ's execution, the court held that they could not recover damages for property destruction. *Id.* at \*3.[10]

---

[9] *See also Squires*, No. SA-25-CV-561-OLG, 2025 WL 2327946, at n.4 (noting that officials executing facially valid judicial orders are entitled to absolute immunity because "[e]nforcing or executing a court order is intrinsically associated with a judicial proceeding" (quoting *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994)).

[10] In May 2025, a similar case against various Guadalupe County officials (including Constable Faulkner) based on the same factual allegations was filed by the trustee of the Herrmanns' private irrevocable trust. *Ferrell v. Pointer, et*

**V.      The Instant Lawsuit**

In June 2025, the Herrmanns filed the present iteration of their claims challenging the foreclosure of the Property and their eviction.[11] *See* ECF No. 8.

Relying upon a slew of theories, the Herrmanns seek to overturn the state-court judicial decisions that were adverse to them. They allege: (1) CUTX's lien and foreclosure are constitutionally defective under Texas Constitution article XVI, section 50; (2) CUTX obtained the foreclosure and writ of possession through fraudulent misrepresentations to the state court about default and recording of the deed of trust; and (3) the resulting writ and eviction order are "facially void," so the foreclosure sale and any transfer of title are legally null. *See* ECF No. 8.

The Herrmanns assert claims against CUTX for violations of the Texas Constitution, fraudulent misrepresentation, and wrongful foreclosure. *See id.* at 7–8.

The Herrmanns allege that the County Defendants—by executing the writ of possession by forcing entry, damaging the door, and removing Mr. Herrmann—are liable for trespass, property destruction, unlawful seizure/detention, trespass, and deprived him of due process and property rights under 42 U.S.C. § 1983 and the Texas Constitution. *See id.* at 6, 8–10. Plaintiffs also assert claims for conspiracy to violate their civil rights (42 U.S.C. § 1985) and neglect to prevent a conspiracy to violate their civil rights (42 U.S.C. § 1986). *See id.* at 10.

The Hermanns seek declaratory relief that the state foreclosure order, summary judgment, and writ of possession are void, and that CUTX lacks authority to foreclose on or evict them from the Property. *See id.* at 7. They also seek injunctive relief to stop or unwind foreclosure and eviction

---

*al.*, No. 5:25-CV-593-XR (W.D. Tex.). The case was later dismissed based on the trustee's failure to retain counsel on behalf of the trust. *See id.*, ECF No. 33.

[11] In August 2025, the Herrmanns filed an action in County Court seeking to set aside the foreclosure order. *See Herrmann v. Credit Union of Texas et al.*, No. 2025-CV-203. The case was dismissed in October 2025 and is pending before the State of Texas' Fourth Court of Appeals. *See id.*, Register of Actions.

proceedings and to prevent further enforcement of the state-court orders. *Id.* Finally, they seek damages based on the alleged fraudulent misrepresentation by CUTX, wrongful foreclosure, constitutional violations under 42 U.S.C. § 1983, and state-law claims for trespass and property destruction related to the entry and removal during execution of the writ. *Id.*

Both CUTX and the County Defendants have moved to dismiss the Herrmanns' claims in their entirety. CUTX challenges the Court's subject matter jurisdiction and asserts that the Herrmanns' claims are barred by *res judicata* and otherwise fail as a matter of law. *See* ECF No. 26. The County Defendants assert that the Herrmanns' claims are barred by res judicata, absolute immunity, and qualified immunity, and otherwise fail to state a claim on which relief can be granted. *See* ECF No. 14. Defendants have also moved to designate the Herrmanns as vexatious litigants and issue a pre-filing injunction against them. *See* ECF Nos. 15, 27.

The Herrmanns object to the dismissal of their claims and any designation as vexatious litigants or prefiling injunction against them. Since the filing of Defendants' Rule 12 motions, the Herrmanns have filed 17 advisories and responses (ECF Nos. 18, 22–25, 28–31, 33, 35, 37, 39, 42, 43, 52, 55) and 8 motions (ECF Nos. 41, 42, 49–53), totaling over 600 pages. The Court will briefly address the Herrmanns' motions, in light of its conclusions that (1) it lacks subject matter jurisdiction over the Herrmanns' claims against CUTX and (2) the claims against the County Defendants must be dismissed under Rule 12(b)(6).

## DISCUSSION

### I.    Defendants' Motions to Dismiss (ECF Nos. 14, 26)

#### A.    Legal Standards[12]

##### 1.    Fed. R. Civ. P. 12(b)(1) – Lack of Subject Matter Jurisdiction

Dismissal is proper under Rule 12(b)(1) "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). In ruling on a motion under Rule 12(b)(1), the Court "has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009).

"Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981). In short, no presumptive truthfulness attaches to a plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *Id.* at 413. Further, materials such as affidavits and regulations can be considered when relevant to the issue of jurisdiction. *Poindexter v. United States*, 777 F.2d 231 (5th Cir. 1985).

---

[12] Because the Herrmanns are proceeding *pro se* in this matter, the Court must construe their allegations liberally, as *pro se* plaintiffs are held to less stringent pleading standards than those applicable to lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Still, while courts "liberally construe briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel, *pro se* parties must still brief the issues and reasonably comply with [federal procedural rules]." *Grant v. Cuellar*, 59 F.3d 524, 524 (5th Cir. 1995)).

### 2.    Fed. R. Civ. P. 12(b)(6) – Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." Dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *See Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. Feb. 3, 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir. 2012)).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Ass'n.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

**B.**      **Analysis**

**1.**      **CUTX**

CUTX moves to dismiss Plaintiffs' claims for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and, alternatively, for failure to state a claim under Rule 12(b)(6). ECF No. 26. In response, Plaintiffs object that CUTX's Rule 12 motion was untimely. *See* ECF No. 30. But "federal courts must address jurisdictional questions whenever they are raised" because "subject-matter jurisdiction cannot be created by waiver or consent." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001); Fed. R. Civ. P. 12(h)(1).

District courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States" (federal question jurisdiction), or over civil actions that are between citizens of different states and involve an amount in controversy in excess of $75,000, exclusive of interest and costs (diversity jurisdiction). 28 U.S.C. §§ 1331, 1332.

The complaint does not contain any citizenship allegations that would permit the Court to conclude that there is complete diversity of citizenship in this case. *Getty Oil Corp., a Div. of Texaco, Inc. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1258 (5th Cir. 1988).

Nor do the Herrmanns identify any claims against CUTX arising under federal law. First, the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201(a), does not itself provide a basis for federal jurisdiction nor does it create a substantive cause of action. 28 U.S.C. § 2201(a); *see Schilling v. Rogers*, 363 U.S. 666, 677 (1960).

Second, while the complaint cites two federal statutes that create causes of action against private actors for civil rights violations—42 U.S.C. Sections 1985 and 1986—it does not identify which Defendant allegedly violated either statute, let alone explain how that Defendant violated the Herrmanns' civil rights. *See* ECF No. 8 at 10. Moreover, claims under those statutes require a

10

showing of racial discrimination or discriminatory animus. *See* 42 U.S.C. § 1985 (prohibiting conspiracies to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws"); 42 U.S.C. § 1986 (action for neglect to prevent conspiracy under § 1985); *Griffin v. Breckenridge*, 403 U.S. 88, 101–02 (1971); *Jackson v. Biedenharn*, 429 F. App'x 369, 372 (5th Cir. 2011). The Herrmanns do not allege that CUTX—or the County Defendants for that matter—acted with any such animus. *See generally* ECF No. 8.

In short, the Herrmanns' allegations against CUTX do not invoke or establish federal jurisdiction.[13] Because the complaint does not allege a viable federal cause of action, it fails to establish a basis for federal subject matter jurisdiction.

Accordingly, the Court has no authority to adjudicate the Herrmanns' allegations against CUTX, and the claims against CUTX are **DISMISSED**.

---

[13] Even if the Court had subject matter jurisdiction over the Herrmanns' claims against CUTX, their challenges to the purported assignment of the HELOC to a securitization trust and recording of the security would otherwise fail to claim upon which relief can be granted. Indeed, courts have repeatedly determined that such theories are meritless. *See, e.g.*, *Seaforth v. Loancare, LLC*, No. 5:24-CV-576-FB-RBF, 2024 WL 4906781, at *5 (W.D. Tex. Nov. 14, 2024), *report and recommendation adopted*, No. CV SA-24-CA-00576-FB, 2024 WL 4906759 (W.D. Tex. Nov. 26, 2024) (the "theory that any securitization of [a] loan rendered the note and accompanying deed of trust unenforceable and discharged [the borrower's] obligations under them . . . [is] without merit") (quoting *Marban v. PNC Mortg.*, No. 3:12-cv-3952-M, 2013 WL 3356285, at *10 (N.D. Tex. July 3, 2013)).

Similarly, Mr. Paatalo's declarations about the purported securitization of the HELOC would likely be inadmissible because he relies upon hearsay, makes conclusory allegations, opines on the law, and is not an expert in this field. *See Church of the Gardens v. Quality Loan Servs. Corp.*, No. 3:23-CV-06193-TMC, 2025 WL 2524463, at *8 (W.D. Wash. Sept. 2, 2025) ("The Court agrees that Plaintiffs have not established by a preponderance of evidence that Paatalo is qualified to opine about the authenticity of the promissory notes. Paatalo has no qualifying training or experience that would allow him to differentiate original notes from forged notes. Paatalo's curriculum vitae instead shows that he worked as a police officer, loan officer, and has been working as a private investigator since 2009."); *Tadros v. Wilmington Tr., Nat'l Ass'n*, No. 3:17-CV-01623-AA, 2018 WL 1924464, at *4 (D. Or. Apr. 23, 2018).

Moreover, to the extent that the Herrmanns have already asserted identical theories of liability against CUTX, or had an opportunity to do so, their claims would be barred by res judicata. *See Herrmann*, 2025 WL 615397, at *1 (dismissing appeal from the trial court's expedited order allowing foreclosure of the lien securing the HELOC under Tex. R. Civ. P. 736, which expressly disallows appeals from orders allowing foreclosure under that rule). "In Texas, '[r]es judicata precludes relitigation of claims that have been finally adjudicated, or that arise out of the same subject matter and that could have been litigated in the prior action.'" *Van Duzer v. U.S. Bank Nat. Ass'n*, 995 F. Supp. 2d 673, 686 (S.D. Tex.), *aff'd*, 582 F. App'x 279 (5th Cir. 2014). Accordingly, to the extent that any of Plaintiffs' claims are based on the HELOC foreclosure or eviction they are barred and subject to dismissal. Any claims based upon Texas Constitution article XVI, section 50 should have been raised in the state court proceedings and would likewise be barred by res judicata.

### 2.    The County Defendants

### (a)    Individual Liability under 42 U.S.C. § 1983

The Herrmanns' Section 1983 claims against the County Defendants in their individual capacities are largely barred by the doctrine of res judicata and otherwise by immunity doctrines.

### (i)    Res Judicata (Constable Faulkner)[14]

At a minimum, the Herrmanns' claims Section 1983 claims against Constable Faulkner are barred by the doctrine of res judicata, which contemplates, at minimum, that courts not be required to adjudicate, nor defendants to address, successive actions arising out of the same transaction. *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 563 (5th Cir. 1983).

"True res judicata" or "claim preclusion . . . bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005) (citation omitted). For a claim to be barred on res judicata grounds, the Fifth Circuit requires that: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions. *Id.*

As to the last element—whether the same claim or cause of action was involved in both actions—courts apply a "transactional test, which requires that the two actions be based on the same nucleus of operative facts." *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 402 (5th Cir. 2009) (internal citations omitted). Under that transactional test, a prior judgment's preclusive effect extends to all rights the original plaintiff had "with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] action arose." *Petro-*

---

[14] Res judicata may be raised in a Rule 12(b)(6) motion to dismiss where its application is apparent from the complaint and judicially noticed facts. *Anderson v. Wells Fargo, N.A.*, 953 F.3d 311, 314 (5th Cir. 2020).

*Hunt, L.L.C. v. United States*, 365 F.3d 385, 395–96 (5th Cir. 2004). "The nucleus of operative facts, rather than the type of relief requested, substantive theories advanced, or types of rights asserted, defines the claim." *United States v. Davenport*, 484 F.3d 321, 326 (5th Cir. 2007). Additionally, the doctrine "extends beyond claims that were actually raised and bars all claims that 'could have been advanced in support of the cause of action on the occasion of its former adjudication. . . .'" *Maxwell v. U.S. Bank, N.A.*, 544 F. App'x 470, 472 (5th Cir. 2013) (quoting *In re Howe*, 913 F.2d 1138, 1144 (5th Cir. 1990)).

All of the elements of res judicata are satisfied, at least as to Constable Faulkner, in light of the judgment in *Squires*. To begin, (1) both the Herrmanns and Constable Faulkner were parties to *Squires*; (2) the judgment in *Squires* was rendered by a court of competent jurisdiction over the Herrmanns' claims; and (3) *Squires* was concluded by a final judgment on the merits, *see Herrmann v. Squires*, No. SA-25-CV-561-OLG, ECF No. 32.[15] Finally, both actions arise out of the same nucleus of operative facts: execution of the writ of possession of the Property by Guadalupe County officials (including Constable Faulkner) in April 2025. *Compare Squires*, 2025 WL 2327946, at *3 (noting that Plaintiffs alleged that "[i]n April 2025, Plaintiffs were forcibly evicted from their home by Defendants Sheriff Joshua Ray, Constable Harvey Faulkner, and other 'unidentified men.'") *with* ECF No. 8 at 2 ("Constables forcibly removed Plaintiffs John M. Herrmann from his homestead based on [the writ of possession.]").

While the Magistrate Judge in *Squires* emphasized that officers only have qualified immunity for the *manner* in which they choose to enforce a court order, 2025 WL 2327946, at *2,

---

[15] Although dismissal under §1915(e) is not generally a dismissal on the merits, the Fifth Circuit has recognized several circumstances where the dismissal under § 1915(e) may prejudice a later-filed, fee-paid action. *Denton v. Hernandez*, 504 U.S. 25, 24 (1992); *Marts v. Hines*, 117 F.3d 1504, 1505 (5th Cir. 1997). These include (1) complaints containing claims which, on their face, were subject to an obvious meritorious defense, (2) when the plaintiff has been given an opportunity to expound on the factual allegations through a questionnaire or a hearing and still could not assert a claim with an arguable factual basis, and (3) claims without an arguable basis in law." *Marts*, 117 F.3d at 1506.

13

the claims were directed toward the destruction of the Property—property in which they no longer had any ownership interest, *id.* at \*3. To the extent that the manner in which Constable Faulker executed the writ violated any of Mr. Herrmann's rights under the United States or Texas Constitutions, Mr. Herrmann should have asserted those claims in *Squires*. *See Uithoven v. U.S. Army Corps of Eng'rs*, 884 F.2d 844, 847 (5th Cir. 1989) (Res judicata "bars all claims that were or could have been advanced in support of the cause of action on the occasion of its former adjudication . . . not merely those that were adjudicated.").

Accordingly, the Herrmanns' claims against Constable Faulkner arising out of the eviction are barred by the doctrine of res judicata and must be dismissed with prejudice.

### (ii)    Immunity Doctrines (Chief Wolverton & Doe)

Chief Wolverton and John Doe 3 were, presumably, among the "unidentified" officers sued in *Squires*, barring the Herrmanns' claims against them as well. Even if they were not, the immunity analysis in *Squires* applies with equal force to Chief Wolverton: law enforcement officers "have absolute immunity for enforcing the terms of a court order but only qualified immunity for the manner in which they choose to enforce it." 2025 WL 2327946, at \*2 (quoting *In re Foust*, 310 F.3d at 855). "Thus, any claims arising out of [Chief Wolverton and John Doe 3] simply carrying out an eviction order are barred by absolute immunity[.]" *Id.*

While the Herrmanns purport to challenge the *manner* in which Chief Wolverton and John Doe 3 executed the writ, they do not identify either officer's conduct with any specificity let alone explain how it allegedly violated Mr. Herrmann's personal civil rights (rather than his property rights). The Court cannot reasonably infer a constitutional violation from Mr. Herrmann's conclusory assertions that he was unlawfully "seized" or "detained" by some unspecified officer. *See* ECF No. 8 at 2, 8–9. For example, "[n]o warrant or probable cause is necessarily required

14

when a state actor executes an eviction under court order." *Woods v. Keiffer*, 610 F. App'x 416, 417 (5th Cir. 2015) (citing *Soldal v. Cook County,* 506 U.S. 56, 71 (1992); *Freeman v. City of Dallas*, 242 F.3d 642, 647 (5th Cir. 2001)); *see also id.* ("When executing warrants, officials "may take reasonable action to secure the premises and to ensure their own safety and the efficacy of the search.") (citing *Los Angeles County v. Rettele*, 550 U.S. 609, 614 (2007)).

Indeed, the Herrmanns do not plausibly allege that the writ of possession was "facially void," let alone offer any reason to believe that either Chief Wolverton or John Doe 3 were or should have been aware of such a defect in the writ of possession when they executed it. Thus, even if the writ of possession had some fundamental flaw, Chief Wolverton and John Doe 3 would be entitled to qualified immunity as to any claims arising out of their execution of the writ. Qualified immunity shields law enforcement officials from suit under 42 U.S.C. § 1983 if they could have reasonably believed their actions to be lawful, in light of the law "clearly established" at the time of their actions and the information the officers possessed." *Hale v. Townley,* 45 F. 3d 919 (5th Cir. 1995). "[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The Herrmanns have not plausibly alleged that any of the County Defendants were aware of a defect in the writ that should have stopped them from executing it. *See Woods v. Keiffer*, 610 F. App'x 416, 416–18 (5th Cir. 2015) (affirming district court's dismissal of § 1983 claims against deputy constable arising out of the execution of a writ of possession on the basis of qualified immunity); *Dore v. Chaisson*, No. 93-2632, 1995 WL 9396, at *8 (E.D. La. Jan. 6, 1995) (holding claims against constable arising out of execution of a writ of possession were barred by qualified immunity where, among other reasons, the constable was "not an attorney and would not have any

15

reason to consider whether the writ of possession was subject to invalidation before he executed it"). So too here.

The Herrmanns' Section 1983 claims against Chief Wolverton and John Doe 3 in their individual capacities are barred by absolute and qualified immunity.

### (b)    Official Capacity Claims under *Monell*

"An action against a [governmental] official in his or her official capacity is not a suit against the official but a suit against the official's office." *Will v. Mi. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Supreme Court made clear long ago that a local governmental entity can only be held liable under § 1983 for constitutional harms that are directly attributable to the governmental entity itself. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978) ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort.").

Thus, a plaintiff suing a municipality under § 1983 must show that "the municipality has a policy or custom that caused plaintiff's injury." *Crull v. City of New Braunfels*, 267 F. App'x 338, 342 (5th Cir. 2008) (first citing *Monell*, 436 U.S. at 689; and then citing *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (per curiam)). "The plaintiff must identify the specific policy or custom, and show that the final policy maker, through its 'deliberate conduct,' was the 'moving force' behind the violation." *Id.* at 342 (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997)). "The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)).

Plaintiffs' complaint has no allegations of a county policy, practice, or custom underlying Guadalupe County Defendants' actions. *See generally* ECF No. 8. Accordingly, they have failed to state a Section 1983 claim against the County under *Monell*.

### (c)      Individual Liability under 42 U.S.C. §§ 1985 and 1986

As stated above, the Herrmanns have failed to state a claim against the County Defendants for conspiracy to violate their civil rights under 42 U.S.C. §§ 1985 and 1986 (*see* ECF No. 8 at 10). They do not include any factual allegations that would allow the Court to reasonably infer that the County Defendants engaged in a conspiracy of any kind, let alone a conspiracy based on discriminatory animus. *See Griffin*, 403 U.S. at 101–02; *Jackson*, 429 F. App'x at 372.

### (d)      State-Law Claims

The Herrmanns' state-law claims for trespass and property destruction fail as a matter of law because, when the writ of possession was executed, they no longer owned the Property. *Cf. See Envt'l Processing Sys., L.C. v. EPL Farming Ltd.*, 457 S.W.3d 414, 419 (Tex. 2015) (elements of a claim for trespass are: 1) entry, 2) *upon land of another*, 3) without the property *owner*'s consent or authorization) (emphasis added); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 210 n. 44 (Tex. 2002) (conversion is "the wrongful exercise of dominion and control over *another's property* in denial of or inconsistent with his rights.") (emphasis added).

As the court held in *Squires*, "Plaintiffs cannot recover for damage to a property that they no longer had an interest in." 2025 WL 2327946, at *3 (citing *Nguyen v. Fed. Nat'l Mortg. Ass'n*, 958 F. Supp. 2d 781, 794 (S.D.Tex 2013) ("The plaintiffs lost the interest they could claim in the property when the defendants foreclosed[.]"). Accordingly, the Herrmanns' state-law causes of action against the County Defendants fail as a matter of law.[16]

---

[16] To the extent that Plaintiffs seek to assert the other state-law claims identified in the complaint—wrongful foreclosure, violations of the Texas Constitution, and fraudulent misrepresentation—against the County Defendants,

**II.    Defendants' Motions to Declare Plaintiffs Vexations Litigants (ECF Nos. 15, 27)**

Defendants assert that Plaintiffs should be declared vexatious litigants and subject to a prefiling injunction. *See* ECF Nos. 15, 27,

Federal Rule of Civil Procedure 11(b) provides that:

> By presenting to the court a pleading, written motion, or other paper— whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; [and]
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

FED. R. CIV. P. 11(b). Violations of this Rule subject a litigant to sanctions, including non-monetary ones, with the goal of "deter[ring] repetition of the conduct." FED. R. CIV. P. 11(c)(4). This Rule gives district courts wide discretion in determining what sanctions are appropriate. *See Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 877 (5th Cir. 1988). Further, a court may order a party to show cause why conduct has not violated Rule 11 and impose these sanctions *sua sponte.* FED R. CIV. P. 11(c)(3).

In addition to the Rules, federal courts have inherent power to sanction abusive litigation practices "to protect the efficient and orderly administration of justice and . . . to command respect for [their] orders, judgments, procedures, and authority." *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993). Within this inherent authority is the ability to issue a pre-filing injunction to deter vexatious

---

those claims fail because the Herrmanns have alleged no factual allegations to support any such claims against the County Defendants.

filings with the court. *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 189 (5th Cir. 2008). When determining whether the imposition of a pre-filing injunction would be appropriate, the court must weigh all relevant circumstances, including four main factors:

> the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Id.* (internal quotations omitted). If issued, such injunctions "must be tailored to protect the courts and innocent parties, while preserving the legitimate rights of litigants." *Id.*

All four factors regarding the issuance of a pre-suit injunction also support this sanction. In short, the Herrmanns have a history of filing harassing and duplicative lawsuits without a good-faith basis; their filings have imposed significant burdens on the Court and the parties; and lesser sanctions would not adequately deter their conduct. *Cf. Crear v. JPMorgan Chase Bank, N.A.*, 491 F. Supp. 3d 207, 219 (N.D. Tex. 2020) (*pro se* action against trust deed beneficiary seeking to rescind foreclosure sale of subject property on grounds that various documents filed with county were fraudulent, invalid, and/or void).

While Plaintiffs point out that some of their lawsuits were voluntarily dismissed or dismissed without prejudice (and thus have no preclusive effect), the question before the Court is not whether Plaintiff's claims have already been adjudicated, but whether their repeated filings have unduly burdened the Court and are likely to do so in the future. In this case, Plaintiffs have filed numerous lawsuits challenging the foreclosure and their eviction.[17] After losing in state court, they have no good-faith basis for pursuing this litigation in this forum. Rather than pursue appellate remedies, Plaintiffs have embarked on a campaign of repetitive, meritless litigation in federal and

---

[17] Plaintiffs have also filed several other lawsuits in this Court. *See supra* note 1.

state courts—naming lenders, county officials, judges, and law enforcement officers as defendants—seeking to relitigate issues already resolved. Their numerous and often irrelevant filings impose a burden on the Court as it attempts to decipher Plaintiffs' theories.

There are no other alternative sanctions that can be imposed to stop further meritless litigation regarding the foreclosure and eviction in this case except to bar Plaintiffs from the filing of any other Complaints in this Court, or any other federal or state court that challenge the foreclosure and eviction addressed here. Plaintiffs, of course, may file a notice of appeal if they wish to appeal the dismissal of this case.

Moreover, a pre-filing injunction is not an absolute bar on filing suit in this district; it will merely allow the Court to preview the plausibility of Plaintiffs' claims before permitting them—independently or jointly—to initiate a new action.

Accordingly, the Court issues a pre-filing injunction. The Herrmanns are **ENJOINED** from filing any future lawsuits in the Western District of Texas, together or separately, unless and until they seek and obtain written permission to do so.

### III.     Plaintiffs' Pending Motions (ECF Nos. 36, 40, 44–48, 51)

The Herrmanns have filed multiple motions seeking to enforce Fed. R. Civ. P. 7.1, which requires nongovernmental corporations to disclose any parent corporation and any publicly held corporation owning 10% or more of its stock. *See* ECF Nos. 36, 46–47. This Rule is intended to aid judges in determining whether they should recuse based on any financial interest. CUTX filed a statement, albeit late, that "CUTX is member-owned and there is no publicly held corporation owning 10% or more of its stock (as it does not have publicly traded stock)." *See* ECF No. 38. The Herrmanns were not prejudiced by the delayed disclosure, especially given that the Court has no financial interest in CUTX. Thus, those motions (ECF Nos. 36, 46–47) are **DENIED** as **MOOT**.

The Herrmanns object to Defendants' reliance on unspecified "matters outside the pleadings" presented in the motions to dismiss, seeking to convert them to summary judgment motions under Rule 12(d). *See* ECF No. 51. But, in reaching this ruling, the Court considered only materials attached to the Herrmanns' filings and filings in previous cases of which the Court has taken judicial notice. *See supra* notes 4–5. Accordingly, the motion for a conversion to summary judgment (ECF No. 51) is **DENIED**.

After Defendants filed their motions to dismiss, the Herrmanns filed a motion for declaratory judgment (ECF No. 40), largely seeking relief based on arguments rejected herein. Thus, the motion (ECF No. 40) is **DENIED** for the same reasons set out elsewhere in this order.

Likewise, the Herrmanns have further submitted requests that the Court enter a scheduling order. In light of the Court's dismissal of the Herrmanns' claims, those motions (ECF Nos. 44, 45) are **DENIED** as **MOOT**.

Finally, the Herrmanns filed a "Motion for Identification of the Real Party in Interest Under FRCP 17(a)," based on their belief that CUTX transferred the HELOC to a securitization trust. *See* ECF No. 48. Because the Court lacks subject matter jurisdiction over Plaintiffs' state-law claims against CUTX, the Herrmanns' motion (ECF No. 48) is **DENIED** as **MOOT**.[18]

---

[18] The motion also appears to raise  "show-me-the-note" and the "split-the-note" theories of foreclosure defenses, both of which have been rejected by the Fifth Circuit. *See Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 253–56 (5th Cir. 2013).

21

**CONCLUSION**

For the foregoing reasons, it is **ORDERED** that:

1.      The Guadalupe County Defendants' motion to dismiss (ECF No. 14) is **GRANTED**, and Plaintiffs' claims against them are **DISMISSED**;

2.      CUTX's motion to dismiss (ECF No. 26) is **GRANTED**, and Plaintiffs' claims against CUTX are **DISMISSED**;

3.      Defendants' motions to declare Plaintiffs vexatious litigants (ECF Nos. 15, 27) are **GRANTED**. John Michael Herrmann and Conchita Henares Herrmann are **ENJOINED from filing any civil lawsuit in the United States District Court for the Western District of Texas unless they first seek leave and obtain permission from a district judge in this district**; and

Before filing any new lawsuit in this district, together or separately, John Michael Herrmann and Conchita Henares Herrmann must file a motion for leave to file the action, along with a proposed complaint, which motion shall be randomly assigned to a Judge for consideration.

The Clerk is **DIRECTED** to not accept any new lawsuit filed by John Michael Herrmann and/or Conchita Henares Herrmann unless and until a motion for leave is filed *and* granted. If the Court receives a new civil action from John Michael Herrmann and/or Conchita Henares Herrmann without a proper motion for leave, the Clerk is **DIRECTED** to docket the filing for administrative purposes only and to immediately **CLOSE** the case, after placing a copy of this Order in the case file. The Court will not otherwise address or acknowledge new cases that are unaccompanied by a motion for leave.

22

Because Mr. Herrmann has other pending litigation in this Court,[19] he is also **WARNED that further frivolous filings or motions in that case or any future filed or removed case may result in the imposition of monetary sanctions**.

4.    Plaintiffs' pending motions (ECF Nos. 36, 40, 44–48, 51) are **DENIED**.

5.    Defendants' Motion to Require Plaintiffs to Obtain Leave of Court Before Filing Additional Pleadings and Order Relieving Defendants of Any Obligation to Respond Absent Court Direction (ECF No. 54) is **DENIED AS MOOT**, in light of the Court's dismissal of Plaintiffs' claims and the imposition of a prefiling injunction.

The Clerk is **DIRECTED** to **CLOSE** this case. A final judgment will issue under Rule 58. Should Defendants seek costs, they should file a Bill of Costs in accordance with the Local Rules.

The Clerk is **FURTHER DIRECTED** to mail a copy of this Order and the Final Judgment to John Michael Herrmann and Conchita Henares Herrmann, 2745 Westpointe Dr. #19203, New Braunfels, TX 78132.

It is so **ORDERED**.

**SIGNED** this 15th day of January, 2026.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[19] *See Herrmann v. Pulliam*, No. 5:24-CV-1387-FB.